801 P.2d 485

**STATE of Arizona, Appellee,**

v.

**Lori Nina MAUPIN, aka Laura Nelson, Appellant.**

Nos. 1 CA–CR 89–347, 1 CA–CR 89–355.

Court of Appeals of Arizona, Division 1, Department A.

April 5, 1990.

Review Denied Dec. 18, 1990.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div., and Paul J. McMurdie, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Stephen R. Collins, Deputy Public Defender, Phoenix, for appellant.

OPINION

CLABORNE, Presiding Judge.

Appellant contends that the trial court erred in requiring her to pay the costs of her extradition as stipulated to in the plea agreement. We affirm the trial court's judgment of conviction and sentence.

FACTS

On November 12, 1987, the Maricopa County Grand Jury indicted appellant on three counts of obtaining narcotic drugs by fraud (CR–87–10158). Appellant allegedly had obtained Tussionex through the use of forged prescriptions. Pursuant to a plea agreement, appellant pled guilty to Count I, obtaining a narcotic drug by fraud, and an amended Count II, attempt to obtain a narcotic drug by fraud. The state agreed to dismiss Count III, a new case arising out of Scottsdale, the allegation of prior felony convictions, and the allegation of *Hannah* [1] priors. It also agreed not to file other charges relating to forged prescriptions that occurred in Maricopa County prior to February 1, 1988. The parties stipulated that appellant would pay a fine in the amount of $2,740.

Eight days after she entered her plea, appellant attempted to obtain Hydrocodone through the use of a forged prescription. A pharmacist at the drug store recognized appellant as being a suspect in a previous drug fraud case. Appellant was arrested and subsequently released on her own recognizance. The Maricopa County Grand Jury indicted appellant on one count of attempt to obtain a narcotic drug by fraud in June 1988 (CR 88–05430).

While she was out on release, appellant fled to Oregon, where she committed another similar offense. She was arrested on a bench warrant for this, the present offense, on September 13, 1988, in Portland, Oregon. She was returned to Arizona on November 18, 1988, and she was incarcerated.

Appellant entered an *Alford* [2] plea in which she pled guilty to attempt to obtain a narcotic drug by fraud. The state agreed not to allege any prior felony convictions, not to allege *Hannah* priors, and not to allege that appellant committed the present offense while she was released on her own recognizance on another offense. The parties stipulated that the appellant would pay

the costs of extradition in an amount not to exceed $10,000.

The trial court sentenced appellant on March 10, 1989, to an aggravated term of six years for Count I in CR 87–10158, obtaining a narcotic drug by fraud; to five years for Count II in CR 87–10158, attempt to obtain a narcotic drug by fraud; and to five years for the attempt conviction in CR 88–05430. The sentences are to run concurrently. She was ordered to pay $1,611.88 in extradition fees.

DISCUSSION

■ On appeal, appellant relies on *State v. Gelden,* 126 Ariz. 232, 613 P.2d 1288 (App.1980), in which the court held that the trial court has no jurisdiction to sentence a defendant to reimburse the state for the costs of extradition. Based on *Gelden,* the appellant reasons that the trial court had no jurisdiction to sentence her to pay the costs of extradition, even though she agreed to do so in a plea agreement.

While we agree that plea bargaining does not create jurisdiction when none previously existed, *People v. McCarty,* 94 Ill.2d 28, 34, 67 Ill.Dec. 818, 824, 445 N.E.2d 298, 304 (1983), we find that the trial court had jurisdiction in this case to accept the plea agreement and sentence appellant according to its terms.

Our decision rests on our belief that *Gelden* no longer controls whether a trial court may impose the costs of extradition as part of a sentence. In deciding as it did, the court in *Gelden* relied on A.R.S. § 13–801 and A.R.S. § 13–3864. A.R.S. § 13–801 authorized the trial court to levy *fines* as part of a criminal sentence and A.R.S. § 13–3864 required the *county* in which the offense occurred to bear the costs of extradition.[3] The court reasoned that reimbursement for the costs of extradition could not be viewed as the imposition of a fine. In light of this, and because A.R.S. § 13–3864 required that extradition costs be borne by the county, the court

---

**1.** *State v. Hannah,* 126 Ariz. 575, 617 P.2d 527 (1980).

**2.** *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

**3.** A.R.S. § 13–3864 was amended in 1981 to provide that in addition to the county, the costs of extradition could also be paid by the state. *See* Laws 1981, Ch. 194, § 5.

concluded that a trial court lacks jurisdiction to impose extradition costs as part of a sentence. *Gelden*, 126 Ariz. at 232, 613 P.2d at 1288.

Subsequent to *Gelden*, the legislature substantially changed the statutes that relate to fines and restitution. In 1981, A.R.S. § 13–803 was renamed to include the title "fine for reimbursement of public monies," and the following subsection was added:

> (E) The court may impose an additional fine upon sentencing for any offense to require that the defendant reimburse the law enforcement agency for any public monies paid to any person.

*See* Laws 1981, Ch. 264, § 4.

In 1986, the legislature amended A.R.S. § 13–803 and renumbered it as A.R.S. § 13–804. *See* Laws 1986, Ch. 248, §§ 4, 5. Subsection (E) was incorporated into A.R.S. § 13–804(A), which provides that "upon a defendant's conviction for an offense causing economic loss to any person the court ... may order that all or any portion of the fine imposed be allocated as restitution ... to any person who suffered an economic loss as caused by the defendant's conduct." The term *person*, unless the context otherwise requires, includes a government or governmental authority. A.R.S. § 13–105(23).

The legislature also added subsection (H) to A.R.S. § 13–804 which provides for the creation of a restitution lien "in favor of the state for the total amount of the restitution, fine, surcharges, assessments, costs and fees ordered, if any." Amended by Laws 1986, Ch. 248, §§ 4, 5.

■ Finally, A.R.S. § 13–806(H) provides that:

> Following the entry of the judgment and sentence in the criminal case, if the trial court sentences the defendant to pay a fine or *awards costs of investigation or prosecution*, the state may file a restitution lien pursuant to this section for the amount of the fine or costs.

The legislature's change in the statutory language of A.R.S. § 13–804 after *Gelden* reflects an intent to allow a trial court to require a defendant, as part of a sentence, to reimburse the state for the costs of prosecution. In Arizona, costs of prosecution include extradition costs. *State v. Balsam*, 130 Ariz. 452, 453, 636 P.2d 1234, 1235 (App.1981).

■ The state, however, does not cite to A.R.S. § 13–804 in support of its argument that appellant was required to pay the costs of extradition. Rather, the state relies solely on A.R.S. § 13–603(C), which requires the trial court to order a "convicted person to make restitution to the person who is the victim of the crime or to the immediate family of the victim if the victim has died." The state argues that because the word "person" includes the government, and because extradition costs are costs society has incurred as a result of the accused's misconduct, the trial court was required to order appellant to pay the costs of extradition.

We do not believe A.R.S. § 13–603(C) supports the state's position. The term "person," as used in A.R.S. § 13–603(C), is modified by the words "victim of the crime." The rule is that when general terms are followed by particular classes of persons or things, the general words are construed as applicable only to persons and things of the enumerated class. *Davis v. Hidden*, 124 Ariz. 546, 549, 606 P.2d 36, 39 (App.1979). Accordingly, for the state to recover extradition costs pursuant to A.R.S. § 13–603(C), it must be considered a "victim of the crime."

This court gave a broad interpretation to the term "victim" in *State v. Merrill*, 136 Ariz. 300, 665 P.2d 1022 (App.1983), when it held that an insurance company that reimbursed the owner of property involved in an attempted burglary was a victim within the meaning of A.R.S. § 13–603(C). We reasoned that because the insurance company was required to reimburse the property owner, it suffered an economic loss. *Id.* at 301, 665 P.2d at 1023. *Accord United States v. Durham*, 755 F.2d 511 (6th Cir. 1985); *People v. Chery*, 126 A.D.2d 659, 511 N.Y.S.2d 88 (App.1987), *appeal denied*, 69 N.Y.2d 825, 513 N.Y.S.2d 1032, 506

N.E.2d 543 (1987); *Harrison v. State*, 713 S.W.2d 760 (Tex.App.1986).

*Merrill,* however, is fundamentally different from the matter before us. Although not the direct victim, the insurance company reimbursed the victim for the direct loss caused by the defendant's conduct. Here the state seeks recovery, not for any monies it paid to the victim, but rather for expenses that are more appropriately labeled costs of prosecution.

The Illinois Court of Appeals has, on more than one occasion, considered whether a government agency is a victim within the meaning of that state's restitution statute.[4] In *People v. Evans*, 122 Ill.App.3d 733, 738, 78 Ill.Dec. 50, 55, 461 N.E.2d 634, 639 (1984), the court held that a governmental entity conducting an investigation is not a "victim" within the meaning of the Illinois restitution statute to the extent public monies are expended. The trial court had ordered the defendant, as part of his sentence, to pay restitution of $180.00 to the Multi–County Drug Enforcement Group for monies used to purchase drugs from the defendant in an undercover operation. The court found that "where public monies are expended in the pursuit of solving crimes, the expenditure is part of the investigating agency's normal operating costs" and it would "strain the commonly accepted understanding of the word "victim" so as to include the public drug enforcement agency...." *Id.*

The *Evans* case was relied upon in *People v. Bratcher*, 149 Ill.App.3d 425, 429, 102 Ill.Dec. 853, 857, 500 N.E.2d 954, 958 (1986), where the court held that a county that expended money on extraditing a prisoner was not considered a "victim" for purposes of the Illinois restitution statute. As in *Evans*, the court found that extending the term "victim" to include a county seeking reimbursement for extradition costs would strain the commonly accepted meaning of the word "victim." *Id.*

We agree with the position taken by the Illinois Court of Appeals in *Evans* and *Bratcher* and find that a government entity is not a victim within the meaning of A.R.S. § 13–603(C) for the purpose of recovering the costs of prosecution. This does not mean that a government agency may never be considered a victim pursuant to A.R.S. § 13–603(C). For instance, a government agency may be a victim when government property is damaged in the course of criminal conduct or when a government agency reimburses a victim for a loss suffered because of criminal conduct. These situations, however, are not present in this appeal.

We therefore hold that A.R.S. § 13–603(C) does not confer jurisdiction on the trial court to require a defendant to reimburse a government agency for the costs of extradition. We do find, however, that a trial court has authority, pursuant to A.R.S. § 13–804, to order a defendant, as part of a sentence, to pay the costs of extradition. We recognize that in the case before us the trial court may not have followed the technical letter of A.R.S. § 13–804(A) by failing to designate appellant's extradition costs as a fine. This distinction, however, is irrelevant for purposes of this appeal. We are concerned solely with whether the trial court has jurisdiction to order extradition costs as part of a sentence.

Accordingly, the trial court did not err in ordering appellant to pay the costs of her extradition, as provided in the plea agreement. The judgment of conviction and sentence are affirmed.

EHRLICH and KLEINSCHMIDT, JJ., concur.

---

**4.** Ill.Rev.Stat.1985, ch. 38, ¶ 1005–5–6 provides that the court is to determine whether restitution is appropriate, and if it is, the court, in fixing the amount, must "assess the actual out-of-pocket expenses, losses, damages, and inju-

ries suffered by the victim named in the charge and such other victims who may also have suffered out-of-pocket expenses, losses, damages, and injuries proximately caused by the same criminal conduct...."