800 P.2d 15

**STATE of Arizona, Plaintiff, Judgment Creditor–Appellant,**

v.

**Nikolai PERUSKOV aka Giovanni Vigliotto, Defendant, Judgment Debtor–Appellee.**

**No. 1 CA–CV 90–002.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 23, 1990.

29

Richard Romley, Maricopa County Atty. by Roderick MacMillan, Deputy County Atty., and Robert F. Corbin, Atty. Gen. by Ronald M. Andersen, Mariannina E. Preston, Asst. Attys. Gen., Phoenix, for plaintiff, judgment creditor-appellant.

Russell S. Olds, Phoenix, for defendant, judgment debtor-appellee.

## OPINION

EUBANK, Judge.

The state appeals from an order quashing a writ of garnishment in which the Maricopa County Attorney attempted to garnish an inmate bank account administered by the Department of Corrections (DOC). The state contends that a judgment debtor lacks standing to object to the garnishment based on the state's qualified immunity from garnishment and asserts that the state's qualified immunity may be waived if the public policy supporting the immunity is not served. Appellee (Vigliotto) counters this contention arguing that the state may be garnished only in limited circumstances involving the salaries or wages of state officers or employees, and the superior court therefore lacked the authority to issue a writ of garnishment. We hold that the state may not be garnished in this instance and affirm the superior court's decision.

## I. FACTS AND PROCEDURAL HISTORY

In February 1983, a jury convicted Vigliotto of violating A.R.S. § 13–2310, fraudulent schemes and artifices, and A.R.S. § 13–3606, bigamy. On March 28, 1983, the superior court sentenced him to 34 years in prison and ordered him to pay a fine of $336,000.00, including $42,739.09 in restitution. On November 4, 1988, pursuant to an application filed by the Maricopa County Attorney on behalf of the state, the superior court clerk issued a writ of garnishment directed at DOC. DOC did not object, but apparently answered the writ admitting it owed the appellee approximately $14,000.00. The DOC held this money in Vigliotto's "inmate trust fund."

Vigliotto filed a written objection and request for hearing, pursuant to A.R.S. § 12–1580(A), asserting two grounds for quashing the writ: (1) the money in question was exempt from garnishment because it consisted of legal defense funds; and (2) garnishment of the state for the funds in question was not authorized by Arizona law. After a hearing, the superior court quashed the writ finding no authority supporting the attempted garnishment. The court made no finding on whether the funds were exempt, and the issue is not raised in this appeal. No facts pertinent to this appeal are disputed. The decision was

purely one of law, which we review without deference to the trial court's holding. *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 114, 412 P.2d 47, 51 (1966).

## II.  DISCUSSION

### A.  *Standing*

The state bases its lack-of-standing argument on the assertion that its qualified immunity arises out of sovereign immunity. In *Administrators of the Tulane Educational Fund v. Cooley*, 462 So.2d 696 (Miss.1984), the Mississippi Supreme Court held that sovereign immunity is a defense personal to the state and cannot be asserted by any other party. The state argues that the same holds true here, and only it can assert its qualified immunity from garnishment.

■ The statute allowing the state to be garnished is A.R.S. § 12–1601:

The salaries of officers, deputies, clerks and employees of the state or its political subdivisions shall be subject to garnishment as provided in this article, and such garnishment shall not be construed as against public policy.

This statute was enacted in 1929 and has remained unchanged to this date. *See* Laws 1929, Ch. 50, § 1; A.C.A. § 25–221; 4A A.R.S. § 12–1601 (1982). The fact that the state can be garnished only in those limited circumstances set forth in the statute has been referred to as "qualified immunity." *City of Phoenix v. Collar, Williams & White Engineering, Inc.*, 12 Ariz.App. 510, 515, 472 P.2d 479, 484 (App. 1970).

■ The state's qualified immunity from garnishment is not a defense personal to the state. It is a specific limitation on the statutory right of garnishment; it is also a statutory exception to the state's sovereign immunity. Vigliotto, as a party possessing an interest in the outcome of this litigation, possesses standing to assert this objection to the writ of garnishment. *Armory Park v. Episcopal Community Services*, 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985); *Chambers v. United Farm Work-*

*ers Organizing Comm.*, 25 Ariz.App. 104, 106, 541 P.2d 567, 571 (1975).

The garnishment statutes provide the procedure for Vigliotto's objection. A.R.S. § 12–1580(A) (Supp.1989) provides:

A party who has an objection to the writ of garnishment, the answer of the garnishee or a party claiming an exemption from garnishment may, not later than ten days after receipt of the answer, file a written objection and request for hearing. . . .

This statute grants any party the right to object on any plausible grounds to the writ of garnishment and assures that a judgment debtor receives due process. As a judgment debtor, Vigliotto is certainly a party within the meaning of the statute. The state cites no authority for the proposition that the debtor lacks standing to challenge the court's authority to issue the garnishment writ. Under the facts here, Vigliotto may assert the state's qualified immunity as an objection to the writ.

### B.  *Merits of the Objection*

The state contends that its qualified immunity is grounded in the public policy of "keeping public entities free of the inconvenience of handling garnishments and appearing in litigation in which they have no concern." Opening Brief at 5 (quoting *City of Phoenix*, 12 Ariz.App. at 515, 472 P.2d at 484). Based on this assertion, the state advances the argument that the superior court erred in quashing the writ because public policy is not served by applying the state's qualified immunity in this case.

The state argues that because the defense is based on the public policy of protecting the state from being inconvenienced by litigation in which it has no concern, it is up to the state to determine whether it is inconvenienced enough to assert the defense. Because the DOC did not raise its immunity and instead answered the writ, the state feels immunity should not apply.

Our determination of this appeal turns on whether the state, by merely answering the writ, may consent to a garnishment

action, thus effectively waiving its qualified immunity from garnishment.

█ The Arizona Legislature is the only state institution with the power to determine whether the state shall be subject to suit. Ariz. Const. art. 4, pt. 2, § 18 provides:

> The Legislature shall direct by law in what manner and in what court suits may be brought against the state.

Thus, only the legislature may determine when public policy supports the garnishment of the state; only the legislature may consent to garnishment of the state. A.R.S. § 12–1601 presently is the only instance.

█ The burden is on the plaintiff, in this case the Maricopa County Attorney's Office, to show affirmatively that such consent was given. *Grande v. Casson*, 50 Ariz. 397, 408, 72 P.2d 676, 680 (1937), *overruled on other grounds, State ex rel. Morrison v. Thelberg*, 87 Ariz. 318, 350 P.2d 988 (1960); *Stone v. Arizona Highway Comm'n*, 93 Ariz. 384, 381 P.2d 107 (1963). The state maintains that by answering the writ, the DOC consented to the garnishment. The state points to no statute that authorizes the garnishment of the state under these circumstances. Rather, the state argues that DOC's determination that it would not be "inconvenient" to answer the writ enables the state to circumvent the public policy underlying the state's qualified immunity from garnishment. DOC cannot make this determination.

Vigliotto directs the court to three Arizona decisions that have prohibited garnishment of the state, except for the limited statutory exception for wages and salaries of state officers or employees. In *Grande*, the supreme court considered whether the state treasurer was subject to garnishment for funds apparently owed to a party arising out of a contract for improvements to a highway. The court held that the trial court had correctly quashed the writ because the garnishment statutes set forth the only circumstances under which the state could be garnished:

The ordinary rule, of course, is that the state and its officers who hold funds are not subject to garnishment, in the absence of a statute expressly allowing it. Our legislature has made an exception to that rule. . . .

\*　\*　\*　\*　\*　\*

It will be noted that [the exception] referred only to the salaries of certain public officers and employees, and not to monies due under contract with the state. We think that an exception should not be extended beyond its reasonable terms, and that [exception] does not authorize the garnishment of the state for moneys due under contracts of any nature, but applies only to wages and salaries.

50 Ariz. at 410–11, 72 P.2d at 681–82.

In *State v. Allred*, 102 Ariz. 102, 425 P.2d 572 (1967), the court announced that the state is subject to garnishment only in the limited instance provided by statute:

This Court held that the State is not subject to garnishment except as to the wages owed by it to its employees and officials [citing *Grande v. Casson*]. Garnishment is a creature of statute governed by the terms of the statutes which have created the remedy. *Weir v. Galbraith*, 92 Ariz. 279, 376 P.2d 396 (1962). The remedy of garnishment did not exist at common law. *Beggs v. Fite*, 130 Tex. 46, 106 S.W.2d 1039 (1937). [Because] the remedy was unknown at common law, *neither the State nor anyone else could be made a garnishee without legislative sanction.*

\*　\*　\*　\*　\*　\*

We have stated that in a proper case we will apply the doctrine of *expressio unius est exclusio alterius*. *Lewis v. Industrial Commission*, 93 Ariz. 324, 380 P.2d 782 (1963). The Legislature in A.R.S. § 12–1601 et seq. has provided that the State may be garnished for wages owed by it to its employees and officials. Thus it appears to us that when the Legislature provided that the State may be made a garnishee only in the situation when a state employee or official is the defendant in the main action, it necessarily meant to exclude the

State from being made a garnishee under any other circumstances.

102 Ariz. at 103–04, 425 P.2d at 573–74 (emphasis added). Thus, without legislative action no Arizona court has the authority to garnish the state.

This court in *City of Phoenix* extended the state's qualified immunity from garnishment and held that municipalities, as subdivisions of the state, are not subject to garnishment in instances other than those listed in A.R.S. § 12–1601. 12 Ariz.App. at 514–15, 472 P.2d at 482–83.

■ The above history makes it evident that the state's qualified immunity arises solely by statute. Because there is no common law garnishment, it is up to the legislature to decide whether and when to empower the courts to garnish the state. The legislature simply has not given the courts the power to garnish the state in instances other than those set forth in A.R.S. § 12–1601. The state concedes that this case is not one of those instances.

The state may be correct in arguing that public policy underlies its qualified immunity from garnishment, but this is a *legislative* policy, and the courts must abide by the legislature's decision to limit their garnishment powers. In short, even though the DOC "assumed the inconvenience of having to answer as garnishee," this does not confer upon the trial court the power to allow the garnishment.

■ The funds in Vigliotto's inmate account are not wages or salaries of public officials or employees, and the state does not argue so. Garnishing these funds would have been in excess of the power the legislature granted the court in A.R.S. § 12–1601.

Because it had 'no power to garnish the state in this instance, the superior court correctly quashed the writ.

### III. SANCTIONS FOR FRIVOLOUS APPEAL

Contending that the state's appeal is frivolous, Vigliotto has requested attorney's fees pursuant to Rule 25, Arizona Rules of Civil Appellate Procedure.[1] The supreme court has set forth guidelines for deciding whether an appeal is frivolous:

> (A)n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.

*Arizona Tax Research Ass'n v. Department of Revenue*, 163 Ariz. 255, 258, 787 P.2d 1051, 1054 (1989) (quoting *Marriage of Flaherty*, 31 Cal.3d 637, 651, 646 P.2d 179, 187, 183 Cal.Rptr. 508, 516 (1982)); *accord Price v. Price*, 134 Ariz. 112, 114, 654 P.2d 46, 48 (App.1982).

We have examined the issue closely, and we find that the state's appeal is neither indisputably without merit, nor for an improper motive.

The judgment of the superior court is affirmed. The appellee's request for sanctions on appeal is denied.

JACOBSON, P.J., and EHRLICH, J., concur.

---

1. Rule 25 states:
   Where the appeal is frivolous or taken solely for the purpose of delay ... the appellate court may impose upon the offending attorneys or parties such reasonable penalties or damages (including contempt, withholding or imposing of costs, or imposing of attorneys' fees) as the circumstances of the case and the discouragement of like conduct in the future may require.